Good morning. May it please the court, Jeff Brandt for Israel Brito counsel. As the court's aware, this is a case of a defendant being arrested, immediately admitting guilt even before having counsel, eventually attending multiple proffer sessions, setting a course to plead guilty and pleading guilty. But unlike most, not all, but unlike most defendants, he did not receive an acceptance of responsibility three-point reduction or three-level reduction to be more accurate. And the question, of course, is why and whether it was the puzzling conduct and advice of counsel, including a clear misunderstanding of the law, by his defense counsel that led to that lack of acceptance reduction. To the government, it wasn't the attorney's fault. To the government, the attorney's decision to advise Mr. Brito to do and say things to ensure that he would not get a three-level reduction, but not also some what we submit are completely unreasonable, unattainable objections for drug quantity and leadership, was somehow strategic. We believe the record shows otherwise, and the best evidence in support. But don't you have to show that it shows otherwise as a matter of law? Because if it's a factual question, then we would defer to the district court on that. I think my answer is yes, but I'm not sure I understand the question. Well, you're saying that it was not strategy. Let's focus on the proffer situation and put aside allocution for the moment. You're saying it wasn't strategy to tell him not to confess to this other stuff. And therefore, you're saying as a matter of law, it was inadequate or ineffective assistance of counsel. Because if it was strategic, then we generally give a lot of deference to that. So my question is, is the issue of whether it's strategic something that's a factual finding or a conclusion of law? In other words, how much deference do we give to the district court's finding that it was strategic? I think now I get your thing. Okay. I think it's a subset of a greater picture. Yes, if it's strategic on the facts, we lose as a matter of law. But I think it starts as a question of fact. Tell me why that's not a reasonable strategy for a counsel to tell his client, don't go in there and admit a bunch of stuff that you didn't plead to. That can be. I've given that advice. I mean, why is that not pretty good advice? On these facts, this client and this attorney had what was almost a gift. And that was a really bad decision by the attorney, in my view, to go in there and not admit anything and then argue acceptance. But even after that, the gift is, you now get to see the pre-sentence investigation report. You now know what the probation officer is telling Judge Ludlam what the drug quantity is going to be. You know that with what, I mean, the factual basis establishes leadership. The factual basis tells you what the name of one of the drivers by going back to the PSR. That initial PSR lays out a road map for acceptance of responsibility. But you're basically arguing as a matter of law the attorney's advice was not strategic. And that's the part that I'm having trouble with. I mean, in other words, we could disagree and we now have the benefit of knowing what happened. That always makes it easier. You know, after you go for it on fourth and one and you don't make it and that was a bad decision, you make it. It was brilliant, right? But we view the fourth and one call at the point of the decision, not knowing that the pass was dropped or whatever. And I'm trying my hardest to answer Judge Davis's question by dropping a reasonable defense attorney in that moment of having an opportunity to go to a second pre-sentence interview. Okay, see, maybe I don't understand what you're saying. But what if he'd gone in there and, you know, been very loquacious and said, gone back, you know, three or four years earlier and he admits to instead of 28 kilos, he's got 100 kilos? Well, first, he needs to have his attorney there. And the attorney didn't show up for the first. Well, but I mean, you know, that's, he doesn't have to be there, so. For the second one, Judge Davis, both the attorney and Mr. Brito knew exactly what needed to be said to get acceptance of responsibility, admit relevant conduct. It was all there in the pre-sentence investigation report establishing 169.27 kilograms of cocaine, leadership, all of which is already hinted to by the fact that Mr. Brito has yet to admit that he really did do all this supposedly relevant conduct. And so is he supposed to go in there and admit to stuff? So this is the opposite question of Judge Davis is saying, you go and admit to a bunch of stuff they didn't know about and it makes it worse for you. But I also don't think you should ever advise your client to go in and admit to stuff he didn't do. Even if everybody thinks he did it, even if the evidence looks bad, you know, even if you're standing there with the smoking gun, if you didn't do it, you shouldn't admit to it, right? I mean, you're not going to tell us that the Sixth Amendment requires a lawyer to tell his client to lie. Okay. So he has yet to say, I did it. Even now as we sit here in the Fifth Circuit, he hasn't said it. So what do we know? How do we know that he in fact did it? His opportunity to get very detailed on what he did was an affidavit he prepared and sent to my office years ago and was filed and the opportunity was closed then to add new evidence. Was that a good opportunity to provide more detail? Absolutely. But I don't think we can hold against Mr. Brito his understanding that he had been wronged and that he had to show that counsel was ineffective to also mean now I need to show that when I prove that I was prejudiced by it, which I think is also clear, that now I'm going to go ahead and say, you know, in 2010, what I'm going to have to say to the probation office. Okay. But it's his burden of proof. And he's got a judge who's, as I understand it, the same judge who sentenced him saying, you haven't really shown me that anything's changed. So yeah, I mean, your lawyer could have maybe done this or that differently. You haven't shown me the outcome would be different because you have yet to say you actually did all this other stuff. You still think it was the nephew or whoever that was at fault. Judge Haynes, the second argument of appeal might not be the strongest one, but it helps show that when the government tries to shoot down prejudice for the allocution, it falls right into the overall error and prejudice of the first argument. And that is, why is he up there continuing to argue objections that have already been overruled? Because he might want to come see us. If you were to prevail on the allocution when the other one goes away, right? I hadn't thought of that. Because the smoking gun, to me, is the statement that the court said, I was contemplating a sentence outside the guideline range but waiting to hear something from Mr. Brito. Basically, it was a denial, again, of all the elements. So when she says, going into allocution, she was intending or thought she was going to give a below-guideline sentence if he had just allocated right. Well, if we were to reverse on that, then the other goes out the door and he gets another chance at allocution. And how can we say, in light of all of this, maybe this is the question to the government, that given what the district court said at allocution in open court, that what she was looking for and what she planned to do was below the guidelines, that failure to explain what allocution even meant is not prejudicial and, you know, I'm throwing you a softball, but it seems to me that's where the better case lies. I think the judge's comments when it came to allocution demonstrated that she was not holding Mr. Brito accountable for the error. Let me ask you this. Counsel didn't know that, did he? Counsel didn't know when he talked to his client that the judge had this in mind. Had in mind the possibility of going below the guidelines? Yes. No, I'm not positing that, but I am positing that your client should know what allocution is, and then if you've just lost on two objections and it's over, you don't go up there and talk about the objections. And Judge Haynes, he had waived his direct appeal right for sentencing. So that was it. It was then or never when it came to deciding whether he was going to be responsible for that amount of drugs and leadership. Both, again, on this record are clear. Okay, well, he's here, so he made it here somehow. Let me ask you this. Is it your position that the Sixth Amendment requires a lawyer to tell the client what to say in allocution? Not what allocution is, but what to say. All right, so if Mr. Bozo, or have you pronounced it, had said, look, Mr. Brito, allocution is a time in which you can say whatever you want to say to the court in mitigation of your sentence. The word mitigation means reducing your sentence, trying to get your sentence reduced, period. And that's all he'd said. We would all agree that that is an accurate statement of what allocution is, and it's very competent counsel to say that. Would it have made a lick of difference here? Because I would think, as a layperson, it helps me to say it's all the nephew's fault. I think we have to apply that accurate statement of advice to the case. And the next statement I make as defense counsel is, you just lost the guidelines. The guidelines are over. Here's your chance, because the guidelines are advisory, to try to get something less. But going up and arguing, it's the client's turn to talk. The lawyer just did the arguing about objections. That's the lawyer's job. It lost. That's over. But the advice is before the hearing. I mean, you don't, in the middle of the hearing, get to go take your client out and woodshot him. So before the hearing, before you know how things are going, you explain that allocution, and frankly, a lot of times judges say, this is your chance to say whatever you want in mitigation of your sentence. You know, maybe they explain what mitigation is. He might think, and probably still does today, but for knowing all of this legal stuff that has come up, that if I blame the nephew, that is in mitigation. I am less culpable, because I didn't do it. The nephew did it. After the opportunity for the second PSR, reasonable counsel goes to Mr. Brito and says, that's over. That is over. What this attorney did is somehow created this idea that we can go object and get acceptance, and we can go and object on drug amount and leadership. And in reality, on this record, after seeing the PSR, but before the second interview, that's over as a reasonable option. You know, the other thing going here is a lot of sentencing judges don't place much stock in a guy who has been in a conspiracy for a long time, coming up and saying, you know, I am so sorry for what I have done. I mean, the judge many times thinks, yeah, I know, you're sorry you got caught. So, you've got to weigh that against whether maybe you could persuade the judge that you weren't as deeply involved in this conspiracy as he might think you were. Yes, Judge Davis. My experience, and I don't know what value this is, but my experience is if we weren't throwing ourselves on the mercy of the district judge, allocution wouldn't have much value. That's what we're doing 99 percent of the time. Okay, and 99 percent of the time, it really doesn't make a lick of difference. I mean, I read these sentencing transcripts probably five or six a week, if not more. And in a few of them, they don't say anything. But in every one where the defendant says something, they always say, I'm sorry. Because otherwise, there's nothing to say, right? What are you going to do, tell the judge you hate her? I mean, so yes, you're going to say, I'm sorry. So I don't know that this, and this judge we know, we know this judge hears a lot of allocutions. So I'm guessing she's heard plenty of I'm sorry. And she's also the one who heard the habeas case and says, I don't think this guy has yet told me what I want to hear. So it suggests to me that it's not that she wanted to hear he was sorry, she wanted to hear him confess. And if he didn't do it, I don't know that there's anything for him to confess to. So he still hasn't confessed, he still hasn't given her what she wants. And therefore, she's saying it didn't affect the outcome. Why shouldn't we give some deference to her own finding as the sentencing and habeas judge? I think reading the sentencing transcript and then immediately reading the order denying the 2255 shows a stark contrast and frankly, a pullback. I think this judge knew at that time that she was going to give the acceptance responsibility if it was going to give acceptance responsibility if that defense attorney would have gone into the second interview and had Mr. Brito did do what he was supposed to do and was prepared to give a variance. And it was because of what Mr. Brito said, and we're saying as a result of counsel's advice that she didn't give it and that she's backing off when the 2255 gets filed. And she's giving more deference than the attorney deserves in finding that he wasn't. Yeah, but what deference do we give to her deference? That's the question. We weren't there. She was at both proceedings. And I think her order errs by engaging in her own hindsight. She's speculating on what the attorney's strategy was when it's objectively unreasonable to go after acceptance responsibility and try to fight these, the drug quantity and acceptance, I mean, leadership. Okay. Thank you, Mr. Brant. You have some time left. Mr. Gay. Good morning. May it please the court. I guess I'll begin with that little section in the transcript where Mr. Brito provides his allocution. And the judge states, um, okay, at this time, Mr. Brito, you have the opportunity to say whatever you like. And at this point, this is allocution. So you can tell me about yourself, your family, whatever you would like to say. And I think it's clear, Judge Wiener, getting to your question earlier, that I think that the judge was expecting at this point that Mr. Brito was going to say something that indicated something akin to a recognition of his culpability. I think so too, or she wouldn't have said what she did after he finished. But the fact that he had been coached and instructed all through two PSR hearings or interviews with probation to minimize, not talk about the crime, everything. He doesn't know what allocution is. He doesn't know what the judge wants to hear. All he's been told over and over by his counsel is don't talk about the crime. Don't talk about the number of trips. Don't talk about the weight of the drugs. What else is he going to think to say? He doesn't know what allocution is. And even though the judge says this is the time for you to tell him, all he's heard for months is that he's got to deny or not even address all those things. Well, in fact, the record suggests that he did just the opposite of, if that were the case, he did just the opposite. He stood up and started talking about all sorts of things that I think is, in hindsight, which everyone is, that's kind of what's going on here, but it may be that Mr. Brito, had he spoken to probation, would have said all sorts of things, sort of like what he was telling the judge right here, and he would have gotten himself deeper in a hole. Doesn't the record show that there's no question that counsel told him all of this, that you don't talk about? There's nothing in the record that shows what, based on my reading. His statement. Yeah. He is told, obviously, he's put under oath, and the overall admonishment is to tell the truth, and that's what he's expected to do. And do we yet know what the truth is, as Mr. Brito sees it? That's very difficult to say, because he's been clearly, although he pled guilty, he has not ever accepted that it wasn't his nephew, that there weren't as many loads. If you look at the defense counsel speaks to the idea that the strategy was not attainable. He doesn't dispute that there was a strategy. His dispute is that the strategy wasn't attainable. If you look from the objections to the pre-sentence report, which clearly he's trying to limit the relevant conduct to the amount in the factual basis. How much could the sentence have gone up if, say, it had been 50 kilos or 100 kilos instead of 28? Judge, what he argues for in the record and in his objections to the pre-sentence report boils down to an offense level of 34, which would have gotten him approximately 151 to 188. He was looking at 360 to life, and taking three levels off of this is a 209-month difference had he been successful in convincing the judge that he wasn't a leader and that the drug quantity should be limited. It's not a bad strategy, it just wasn't a winning strategy. Exactly, and that's clear from the court's order. To get three levels off of 42, that's not a win. A win is dropping that offense conduct level down to the amount stipulated to in the factual basis. That's a win. Okay, the thing that bothers me, I'm back to what I was asking counsel opposite, which is Mr. Brito, the last we heard from him, is denying this other stuff and saying it was all the nephew, and if that's the truth, as Mr. Brito sees it, and I understand the government may have a different position, I don't see how any attorney should be required to tell him to say something different. Under the Sixth Amendment, it requires a lawyer to tell his client to lie to a court. I mean, it's just outlandish to me, and Mr. Brito has yet to say, yeah, I did it all, and I was given bad advice to say I didn't. Well, it's very clear that this court's precedents basically hold that this is the opportunity for the defendant, not the attorney, to speak to the court. Well, but counsel, he's entitled to some advice from his lawyer about what would be the best thing for him to do. Well, to tell the truth from his perspective in some time. And what would be the most effective appeal to the judge, you would think? Obviously, Mr. Brito chose a path at allocution that I think is completely contrary to what his lawyer had told him up to this point, which was, let's not expand upon your involvement in any of this and try to limit it to the factual basis. He didn't do that. He went way past that. He went into outright denials, essentially claiming that it was his nephew, Caesar, and that essentially he's being tagged for quantities that he shouldn't be. And so it wasn't as if he didn't follow his lawyer's advice. Well, there was no advice to follow. Well, that's the speculation from what I gleaned from the record. Do we have anything from Mr. Bozzo? Do we have any affidavit from him? We have his statements. No, I don't believe we have. We have a statement at the hearing. Yes, and we have it. Whose burden is it to bring forward evidence from Mr. Bozzo? I mean, it's his strategy and all of that. Is it the burden of the movement, the proponent, the 2255 movement? All of the presumptions cut in favor of the district court's judgment and all of the burdens fall on the petitioner. Okay. So to show that he didn't have a strategy, he didn't know what he was doing, we would need him, right, at least? I mean, he's still alive as far as I can tell in practicing law. I think that the record, as it exists, demonstrates clearly there was a strategy. You can follow it from the objections to the pre-sentence report all the way through, there was a strategy. Now, whether it was successful, we know the result. And so at this point, I think the record's sufficiently developed to say that he didn't meet his burden. I think that's what the record is sufficiently developed to show. Had the record been different, had there been other information available, perhaps of a different result, I don't, now that is the sort of speculation we're not really supposed to engage in. Okay, and then I'll ask you the question I asked your opposing counsel, which is, if we assume that the advice he's supposed to give, that Bozzo is supposed to give Brito, is, look, allocution's a time for you to say what you want mitigation of sentence meaning to lower your sentence. I don't think it's unreasonable, I mean, is it fair to say it's not unreasonable for Brito to think blaming his nephew would be mitigation of his sentence? Obviously. But he didn't even get that. He didn't get the instruction, even the limited instruction that Judge Haynes is referring to. And the court goes on to say, I can't come up with anything when the defendant doesn't give me anything, even here during allocution. Whether he did or did not follow his counsel's advice, what we do know is what he basically stated. Well, but it was with no advice. It wasn't whether he followed it or not. He's admonished, he's sworn at the beginning to tell the truth. And so he is, and you look at this court's case law, it's clear that this is the moment in time where the attorney is supposed to step back and allow the defendant to basically state and plead for whatever mitigation the defendant can come up with. And as Judge Haynes points out, that may be trying to blame somebody else if that's the case law says we shouldn't do. It requires second guessing and speculation about, well, was he told to do this or not told to do this? Under the burden that he had to bring forward, what we do know is that defense counsel had a strategy. He persisted with that strategy. Reasonable minds, in hindsight, could differ about whether it was attainable. I don't think that's the test, however. I think the test is under Strickland, I don't even think you could show that counsel's performance was deficient under the first. But from a prejudice standpoint, I think you have to show that had he given the supposedly correct advice, the allocution advice that I just stated, it would have changed the outcome. And I'm saying there's no evidence of that because this guy is blaming the nephew today. He has yet to stop blaming the nephew. And if that's his story, then that's his best approach is throw himself on the mercy of the court by saying, you know, my nephew led me astray. And that's, as far as I can tell, how he sees it. Today, he still thinks it's the nephew. And that's perfectly plausible reading. But it also, I think, is important to understand is that just, and Mr. Vito is a pretty good example of this, maybe his counsel's efforts at the pre-sentence interview, are that just because a lawyer does not oftentimes control his client to the extent that you can offer them a path, and whether they choose to take it many times, they don't. And so we can see from the beginning that the strategy here is to try to get Mr. Vito down from a 42 to a 34. That's what he asked for, objections to the pre-sentence report and at the beginning of the sentencing hearing. And from there, of course, it doesn't work out. But to say that he was strategically ineffective in the first prong of Strickland, I just think the record is pretty clear that all the way through, and you get to the allocution, he's given an opportunity to speak. The judge, I think, was expressing some belief that she was going to hear something different, and she didn't. And so she, and whether that was counsel's failure, I think is completely speculative. But you keep coming back to counsel's failure and on what to say or not, but the core of this element in this case is not counsel's failure to tell him what to do. It's counsel's failure to even tell him the rule, the purpose of allocution. And, you know, you go back to our case in 91 against V. Taylor, and the most effective approach would have been to show contrition, admit guilt, not shift blame or mirror the objections of the pre-sentence report. He has no chance to do that if counsel doesn't even explain what you are about to be given the right to do. And my response to that would be the record suggests that, and it's his burden, that we don't, that's just. Well, there's no question that he shot himself in the foot by what he said, but he had no idea what the purpose of that allocation was. That's the part that we really don't know from the record that he had no idea. I think that there's an equally plausible reading of the record is that he was admonished to tell the truth, and from his perspective, he told the truth. Admonished by whom to tell the truth? He was sworn under oath at the beginning. Yeah, but that's not counsel. If you concede that there's, that allocation is an area that Sixth Amendment gives the right to counsel, that he had none. It is the defendant's burden to bring forward a record on 2255, such as this, demonstrating that his counsel failed to perform. That's what Strickland directs. And the trial court gave pretty explicit direction, didn't it? And so the presumptions and the standard of review basically foreclose, in my view, any suggestion that counsel had failed to perform. I'm interested in standard of review of the district court, because it's the same judge. We're all trying to get into her head. What if he'd done something differently at sentencing and all of this? And your opposing counsel says, well, she's now kind of changed her mind, or she's kind of lying now, or something like that. And I guess, to me, why wouldn't we as an appellate court give deference to a district court that was at both proceedings, sentencing and 2255, to say, I'm still not getting what I want, and I'm not, you know, because this is also the same judge we would send this back to resentence on who could give the identical sentence she already gave. And I'm just wondering whether this is just an exercise in futility, unless he's willing to now confess, and he has yet to do so. So we cannot presume that he will. And I would point out that if we look at this court's body of case law on acceptance of responsibility on direct appeal, that it is perhaps the most deferential of all the guideline adjustments. The court's opinions and language basically say, without putting too fine a gloss on it, that there won't be any second guessing of the decision to withhold acceptance of responsibility. How much would the three points have taken off? I think you told me and I didn't write it down. I believe that I don't have that. I had the other calculation. I didn't have just what the three levels would have been. I don't dispute that it would have been lower, though. Yeah, I understand. I don't have that exact calculation. We don't have anything from either hearing from the judge about the quantum of the dropping below the guideline she had in mind. She just said, I was contemplating a sentence outside the guideline range. We don't know how many years or months or whatever that would have taken off. That's true. Okay, but I guess, to be fair, would the law require that Mr. Brito now say, you know, had I known what allocution was for, I would have said, yes, it wasn't the nephew. It was me. I did all those extra kilos and whatever, whatever, that he never said to probation. Shouldn't he at least have to come in and say that? He would absolutely have to. And he hasn't, has he? On a remand, if he says the exact same thing again, he's not going to get the remand. I can't imagine that if we were to remand this, that he would say the same thing again. He's got counsel who will explain allocation. But the point given, as going back to the very beginning, is that this is the case, this is not that case where we get to a remand because the presumptions and the standard of review cut all in favor of the district court's judgment. That judgment is, the fact finding, is extremely deferential. And the defendant has... What do you do if you find ineffective assistance? If you find, well, two prongs. First, you have to find that counsel's performance was deficient. And that it was prejudicial. And so under my looking of the record is that we don't get past the first prong. Well, I know it, but I'm asking you hypothetically. Well, if you end up back in the district court, the district court then can basically follow the instructions of this court to either re-sentence or, you know, grant... Or give an opportunity for allocation. And, well, he had, I suppose, a second opportunity for allocation. Well, but you're getting away from the hypothetical of the ineffective assistance. So if he had no effective assistance, then he did not have allocation. If you assume that he had, I guess, if you assume those things, which I'm not, yes. No, I'm not asking you to. I'm telling you a hypothetical. And so if the court finds ineffective assistance of counsel, it goes back. I think that's clear, Judge. And, you know, that's certainly... But I guess my question is, to do that, to send it back, to assume that there's going to be something new said, shouldn't there be some evidence that Mr. Brito is now prepared to make this confession of this relevant conduct? And should we assume that or should we require him to prove that in his affidavit? That's my question. And what's interesting is, and the district court talks about it, in his affidavit that he submits in support of this 2255, he doesn't do anything close to what you're referring to, Judge Haynes. He had the opportunity. It's sort of like a defendant, you know, seeking to withdraw the plea, never asserting actual innocence. Well, it's the same sort of thing. But you don't have to play Simon Says, though. He wouldn't be here asking to go back if he didn't want to allocute. And he's obviously going to say the right thing. But the record basically reflects that Mr. Brito had an opportunity. He had an affidavit that he submitted. He basically stuck with the same line that he had stuck through. And this was well after Mr. Bozzo, I believe, was off the case, if I'm not mistaken. Are we to assume something when it's his burden of proof? That's my problem with this, is we're assuming he's going to go back and say something new, but we have no evidence of that, and it's his burden. And he's the guy who controls the evidence because it's him. And that's exactly. That's where the record basically, and all of the instructions that are given, is that we shouldn't be second-guessing and we shouldn't be speculating. The fact is, the record demonstrates a pretty much a standard course of conduct, and it would be pure speculation to suggest that a different outcome would obtain. Maybe it would, maybe it wouldn't, but the presumptions, we don't get there based on my look. Okay, thank you, Mr. Gay. Okay, Mr. Brandt, back to you. Thank you. Mr. Brito's last words under oath were in his, the affidavit he filed in his 2255. And in that affidavit, he absolutely goes back to support the factual basis. And if we look at the end, that involves conduct he's admitting in 2005. It involves him ordering his nephew, Cesar Brito, to do things. It involves him telling people who have codenames in the factual basis, but can be discerned on who are they talking about. For example, Maria Flores, which is all the relevant conduct that's coming up in the pre-sentence investigation report. So the last thing he's saying to this court is the factual basis is right. The factual basis shows all the everything that's said in the PSR. That's exactly why challenging 169.27 kilograms of cocaine was ridiculous. Why challenging leadership was ridiculous. Leadership is admitted here. He's telling people what to do. He's paying them to do it. He's paying his nephew to do things. So that's the last thing the district court is seeing. The rules of governing 2255 say, if you give me, the district court judge, enough evidence to believe that's true, and I'm not getting an affidavit. The government goes to the defense counsel, gets an affidavit if they can, and if they do, maybe we don't have a hearing because I'm going to believe the attorney. But here, an evidentiary hearing could have been held based upon Brito's affidavit saying, this is what I'm admitting to, and look what it says in the factual basis. I don't know where strategy devolves into it's not really strategy. We're talking about bad strategy, no strategy. There's a sliding scale of what that word's got to mean. And at one end, there's a chance of winning, and at one end, it's walking in the emperor's clothes, and it's just ridiculous. And it's not really strategy anymore. And if the idea is to fight, you've been given a gift of a pre-sentence investigation report that lays out everything that needs to be said, he doesn't understand. I don't understand why trying to lay off some of the responsibility is not a reasonable strategy. Why laying off some of the, of your own, challenging. Why a defendant trying to lay off some of the responsibility to someone else is not a reasonable strategy. In sentencing practice, deciding what to object to and not object to is the key. And going down two opposite paths of, I did it all, and I didn't do it, are not, is not a strategy at all. It's a way to fail getting either one. We can talk about dropping from 360 months down to whatever it would have been with a lower drug amount, which was crazy and could never have worked, or dropping down based upon acceptance of responsibility, or dropping down because of allocution. You weren't saying he didn't do anything. You were just trying to, to say that the nephew had more responsibility than he did, as I understand it. But it was a challenge to drug quantity. It was a, I'm looking at the objections that the attorney filed that's all in support of very specific words in the objection saying he's not responsible for anything more than 30 kilograms. And that's simply laughable. It's, it's shown in his own factual basis. They're not laying it out, like point by point, this kilogram, this kilogram, this kilogram. But it's all in the factual basis that he's controlling people. They'll call somebody Jose, but it's a her. And if you look at the dates and the conduct, it's Maria Flores. So look in the pre-sentence investigation report and see what she says about what he did. I appreciate the court's time. All right. Thank you very much. Thank you, counsel. We have your case.